PETER C. CANNON *et al. vs.* BOARD OF CANVASSERS OF
PROVIDENCE.

PROVIDENCE—OCTOBER 25, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Political Caucuses, Board of Canvassers. Judicial and Ministerial
Powers.*

Pub. Laws cap. 662, § 13, "An act relative to political committees and cau-
cuses," provides, in case of a petition for a recount, that the board of
canvassers of the city of Providence "shall retain all the ballots cast at
such caucus .⋅ . . until such claim is withdrawn or the contest for
the nomination or election is fully determined by the board." It pro-
vides for notice of the time and place of the recount, and directs the
board "to hear and determine all questions raised for or against the
counting of the same or of any thereof, and such recount shall stand as
the true record and result of the vote cast at such caucus, and the proper
officer shall cause the names of the persons so declared to be nominated
for any elective office to be printed upon the official ballots, in accord-
ance with the certificate of such recount." On *mandamus* brought by
certain candidates for nomination against the board of canvassers :—

*Held,* that these provisions were a plenary grant of judicial power.

*Held,* further, that the power of the board was not limited to allowing or
rejecting ballots one by one, but they were constituted a tribunal to de-
termine all questions relating to the official ballot, with power to reject
all ballots if objectionable.

*Held,* further, that, while the giving of a certificate of nomination was a
ministerial act, when the fact of a nomination had been ascertained ; the
ascertainment of that fact was an exercise of judicial duty.

*Held,* further, that, as no personal common-law right was involved to give
the court inherent jurisdiction, the action of the board of canvassers was
not reviewable by the court.

MANDAMUS, brought by certain candidates for nomination
against the board of canvassers of Providence. Heard, and
petition dismissed.

STINESS, C. J. The petitioners, candidates for alderman
and common councilmen in the tenth ward of Providence, ask
that the respondents be compelled by *mandamus* to issue a
certificate of their nomination as candidates for the respective
offices by the caucus of the Democratic party in said ward.

The petition shows that they were declared the nominees of

said caucus by the warden, and so returned to the city clerk ; that a recount was asked and granted, which recount was made by the respondent board ; that the result of the recount was practically the same as that of the warden and clerk, and that they were declared by said board as the nominees of said caucus, but that afterwards the board decided not to issue certificates of nomination.

It appears from the record of the proceedings of the board that the recount was made as stated ; that then they counted the check list and found that the names, checked as voters at the caucus and sworn to by the clerks, exceeded the number of ballots returned by sixty-one.

Thereupon the board took a recess from Saturday afternoon, October 18, 1902, until Monday morning, October 20, at nine o'clock A. M., when the board drew up their findings in a letter to the city clerk, entered as a part of their record, in which they stated the facts above set forth and the further fact that there was in the ballot-box a package of twenty-five ballots marked ''defective,'' although not otherwise showing any defect, which were not counted by the warden and clerk of the caucus, nor by the board. Upon these facts they gave as their finding that there were intrinsic evidences of irregular practice, amounting to fraud in law, by reason of which they declined to certify the result of the recount, because thereby they would certify to a result which they had reasonable ground to believe was obtained by fraud, and which they believed to be wrong and incorrect.

(1)    We think that Pub. Laws cap. 662 (1899), and cap. 867 (1901), give to the board judicial powers which control the case before us.    Section 13 provides, in case of a petition for a recount, that the board ''shall retain all the ballots cast at such caucus . . .    until such claim is withdrawn or the contest for the nomination or election is fully determined by the board.''    It then provides for notice of the time and place of the recount, and directs the board '' to hear and determine all questions raised for or against the counting of the same or of any thereof and such recount shall stand as the true record and result of the vote cast at such caucus, and the proper offi-

cer shall cause the names of the persons so declared to be nominated for any elective office to be printed upon the official ballots, in accordance with the certificate of such recount." These provisions are a plenary grant of judicial power.

The petitioners seek to limit the power to allowing or rejecting the ballots one by one ; but such is not the language of the act.    Their duty is to "determine all questions raised for or against the counting" of the ballots.    If there is an objection which applies to one, that one may be rejected ; if the objection applies to all, then all may be rejected.    The act was evidently intended to make the board the tribunal to determine all questions relating to the official ballot.    It is not a matter involving a strict personal right.    The act is part of the election law of the State.    It is impossible that the political machinery can be so adjusted as to meet every case of deprivation of right, in view of the number of cases liable to arise, the limited time in which they must be disposed of to meet the emergency, and the agencies necessarily employed in settling the steps preliminary to an election.

Upon this ground it was held, *In re Polling Lists*, 13 R. I. 729, that the vote of one qualified to vote under the constitution must be rejected if his name were not listed according to law, and that a law to this effect was constitutional and valid, under the general authority to the General Assembly to prescribe the manner of conducting the elections.    Pursuant to this authority, the General Assembly has constituted boards of canvassers to determine the right of one to be placed upon the voting list, and this power has been held to be judicial and not reviewable.    *Weeden* v. *Town Council*, 9 R. I. 128 ; *Keenan* v. *Cook*, 12 R. I. 52.    In *State* v. *Congdon*, 14 R. I. 267, Durfee, C. J., said that the determination is required by the statute for a particular purpose of temporary duration ; it settled no independent right.

In *Sherry* v. *O'Brien*, 22 R. I. 319, under the same statute now before us, the power of a board of canvassers was held to be judicial and not reviewable.

The petitioners, however, claim that they are entitled to a *mandamus*, upon the ground that the giving of a certificate is

a ministerial act. Undoubtedly it is, when the fact of a nomination has been ascertained. The ascertainment of that fact is an exercise of judicial duty.

The petitioners claim that the board did make a finding in their favor, because, after counting the ballots, the chairman told them that they had a plurality.. Courts speak only by their records. This, therefore, was an unofficial announcement. Moreover, it was before the discrepancy between the check lists and ballots had been discovered, and it could not so bind the board as to prevent a finding according to all the facts. The board considered the whole case before them ; and their conclusion, although in the form of a letter, was, in fact, a return to the city clerk that no valid nominations had been made. This was within their province to find, and their judgment is final. The statute was not intended to make this court a supreme board of canvassers, and no personal common-law right is involved to give this court an inherent jurisdiction.

What the board has found is that they are unable to decide that any one was properly nominated ; and such a decision determines "the contest for the nomination." Suppose that we might have held a different opinion as to rejecting the twenty-five ballots without evidence, for example ; we are not the tribunal to pass upon that question, and therefore it is not for us to say whether we think their judgment was right or wrong. With these rejected, the discrepancy was sufficient to affect the result.

The petitioners have probably thought, from the language of said letter that the board "*decline* to certify the result of their recount," that they were refusing to do a ministerial act of their own volition. The whole letter shows that it was not such a declination ; but, as we have said, it amounts to a finding that all ballots should be rejected and that no nominations were made. An unfortunate use of language does not change a substantial fact.

No question has been raised as to the right of private parties to bring this bill, in view of *O'Brien* v. *Board of*

*Aldermen*, 18 R. I. 113, and we have not considered that question.

The petition is dismissed.

*Thomas F. West*, for petitioners.

*Francis Colwell and Albert A. Baker*, for respondents.